IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

4656 Company, LLC,                                    Case No. 3:24 CV 1334

        Plaintiff,

                                        MEMORANDUM OPINION

    -vs-

O'Reilly Auto Enterprises, LLC,                      JUDGE JACK ZOUHARY

        Defendant.

## INTRODUCTION

This case centers on a single issue: whether the length of a commercial lease is 10 or 15 years (Docs. 43 at 5; 44 at 1). That's it. This Court previously denied judgment on the pleadings because the face of the written documents presented a clear conflict (Doc. 41).

The parties agreed to submit this case to this Court by paper without need for live witnesses or a trial. Now, with a full record, that includes drafts, emails, and deposition testimony, this Court finds the record resolves the parties' intent.

## BACKGROUND

The parties agree on the basic setting and timeline. Plaintiff 4656 Company, LLC owns the property at 4656 Monroe Street (Doc. 44 at 2). Defendant O'Reilly Auto Enterprises, LLC has operated at the site under lease arrangements dating back to 1995, and in March 2020, the parties executed a new written Lease, which became effective July 1, 2020 (Docs. 42-1 at 3; 43 at 5).

The dispute revolves around two executed documents that point in different directions.  First, page one of the Lease form provides a "term of ten (10) years commencing on July 01, 2020" (Doc. 42-1 at 3).  It then sets rent for the 10-year period (*id.*):

> The rental to be paid by Tenant to Landlord for years one (1) through five (5) of the initial term of the Lease shall be in the monthly amount of fourteen thousand four hundred fifteen dollars 38/100 Dollars ($14,415.38).  The rental to be paid by Tenant to Landlord for years six (6) through ten (10) of the initial term of the Lease shall be paid in the monthly amount of fifteen thousand five hundred ninety two and 91/100 Dollars ($15,592.91).

This same page also includes "two renewable options to extend the term of this Lease for a period of five years" (*id.*).  But under the next section, "Rent for Option Periods," it lists the rent for three renewable option periods, as opposed to two (*id.* at 3–4).  Second, one of the attached exhibits, titled "Memorandum of Lease," states:  "Lease shall be and is for a period of fifteen (15) years  . . . ." (Doc. 42-1at 23).  The Memorandum also recites "three (3) extension options of five (5) years each" (*id.*).  This document is silent on the rental amount.

Plaintiff contends the Memorandum's reference to a 15-year term controls because the Lease incorporates exhibits "for all purposes," and includes language that Plaintiff reads as giving exhibits precedence in a conflict (Doc. 44 at 3–4).  Defendant responds the 10-year term in the Lease is the bargain the parties negotiated and executed and the 15-year reference is a mistake that neither party caught at signing (Doc. 43 at 5–6).  Defendant further argues the record shows the parties consistently treated the Lease as 10 years until Plaintiff discovered the discrepancy during a later sale effort (*id.*).

### LAW

Under Ohio law, common words are given their plain and ordinary meaning unless that produces a manifest absurdity or the instrument clearly shows a different intended meaning. *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241, 245–46 (1978).  Courts read the contract

as a whole and do not create ambiguity where none exists. *Dominish v. Nationwide Ins. Co.*, 129 Ohio St. 3d 466, 467 (2011).

If a contract is ambiguous, meaning reasonably susceptible to more than one interpretation, courts may consider extrinsic evidence to determine the parties' intent, including circumstances at formation, the parties' objectives, and their later acts demonstrating the construction they gave their agreement. *U.S. Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 129 Ohio App. 3d 45, 56 (1998). This parol evidence is used to interpret ambiguous terms, not to contradict clear and express language. *Advance Wire Forming, Inc. v. Stein*, 2022 WL 1487605, at *14 (N.D. Ohio 2022) (citing *Schempp v. GC Acquisition, LCC*, 161 F. Supp. 3d 584, 590 (N.D. Ohio 2014)). To determine the parties' intent, this Court "must examine the parties' conduct, any course of dealings between them and the method of handling the specific transaction in question." *Riser Foods Co. v. Shoregate Props., LLC*, 2011 WL 3921850, at *9 (N.D. Ohio 2011) (citation omitted).

Ohio also recognizes the general principle that ambiguous language is construed against the party who prepared the instrument. *Bellish v. C.I.T. Corp.*, 142 Ohio St. 36, 41 (1943). This doctrine applies when extrinsic evidence fails to clarify the parties' intent. *KSMAC Holdings, Ltd. v. Ice Zone Realty, Ltd.*, 2022-Ohio-1456, ¶ 20 (Ohio Ct. App. 2022). Additionally, this Court may reform the contract when a "scrivener's error" has occurred. *ArcelorMittal Cleveland, Inc. v. Jewell Coke Co., L.P.*, 750 F. Supp. 2d 839, 846–847 (N.D. Ohio 2010) ("A court may reform an instrument where, due to mutual mistake, the instrument does not express the actual intention of the parties.").

### DISCUSSION

Plaintiff relies on the Memorandum, along with two terms from the Lease itself. First, Section 32 states: "All exhibits, attachments, annexed instruments and addenda referred to herein shall be considered a part hereof for all purposes with the same force and effect as if copied at full

3

length herein" (Doc. 44 at 3).  Second, Section 33 states that "[i]f there is a conflict between said covenants, conditions, restrictions, rules and regulations and any of the provisions of this Lease, the provisions in the Exhibits shall prevail" (*id.* at 4).  According to Plaintiff, these terms require this Court to defer to the Memorandum.

Defendant argues three points, with which this Court agrees.  First, these two sophisticated commercial entities would not enter a 15-year lease without specifying rent for years 11–15 (Doc. 43 at 12–14).  Second, while Section 33 states that exhibit provisions governing "covenants, conditions, restrictions, rules, and regulations" prevail over the Lease (*id.*), the Memorandum does not create or contain covenants, conditions, or restrictions; it merely provides notice to third parties that a lease exists and the basic terms (*id.* at 12).  Third, the 15-year reference is a scrivener's error (*id.*).

**Intent**

As previously noted, the conflicts between the Lease and Memorandum create "an ambiguity 'on the face' of the agreement" (Doc. 17 at 4) (quoting *Masco Corp. v. Wojcik*, 795 F. App'x 424, 430 (6th Cir. 2019)).  "When a court finds an ambiguity in the contract language, the intent of the parties becomes a question of fact." *Savoy Hospitality, L.L.C. v. 5839 Monore St. Assocs., L.L.C.*, 2015-Ohio-4879, ¶ 31 (Ohio Ct. App. 2015) (citation omitted).  That means this Court must now use extrinsic evidence to determine the parties' intent. *See Lutz v. Chesapeake Appalachia, L.L.C.*, 148 Ohio St. 3d 524, 526–27 (2016) (explaining that extrinsic evidence is admissible to ascertain intent when the contract is unclear or ambiguous, and listing permissible categories of evidence). *See also Arrowood Indem. Co. v. Lubrizol Corp.*, 695 F. App'x 842, 847 (6th Cir. 2017) (stating that the primary objective of contract interpretation is to determine the parties' intent at the time of contracting).  Here, the full record makes clear the parties negotiated and executed a 10-year base term.

First, the Lease's internal structure points strongly to a 10-year base term.  The Lease sets rent for years 1 to 10, but is silent on years 11 to 15 (Doc. 42 at 2–3).  It would be highly unusual for sophisticated parties to commit to a fixed 15-year base term while leaving the last 5 years' rent entirely unstated.  The record contains no persuasive explanation for why a 15-year base term would omit rent for the final 5 years (*see* Docs. 45-1 at 26; 45-2 at 45–48).  The Memorandum, executed the day *before* the Lease, would change the Lease terms and result in an unstated rent structure or an assumption the parties silently agreed to material terms not reflected *anywhere* in the bargain.

Plaintiff is correct that the final Lease includes an integration clause referencing the Lease and its exhibits (Doc. 44 at 7–8).  But integration answers a different question -- what writings make up the agreement -- not what the parties *intended* when the writings are internally inconsistent.  When executed writings conflict, Ohio law allows this Court to consider extrinsic evidence to identify the parties' intended meaning.  *See Lutz*, 148 Ohio St. 3d at 526–27 (listing circumstances, objectives, and the parties' acts demonstrating the construction they gave the agreement as permissible extrinsic evidence).  *See also United States Fid. & Guar. Co.*, 129 Ohio App. 3d at 55–56 (explaining that extrinsic evidence may be considered to determine intent when ambiguity is apparent on the face of the contract).

Second, and equally important, the negotiation record consistently reflects an agreed-upon 10-year deal, and it includes evidence that Defendant resisted a 15-year commitment.  The parties exchanged drafts from December 2019 through March 2020, all of which stated on the first page that the Lease was "for a term of ten (10) years commencing on July 01, 2020" (Docs. 43 at 10; 45-2 at 44–46).  And there were no comments, redlines, or other proposed edits changing the base term to 15 years (*id.*).  The deposition testimony aligns with that trail -- Plaintiff could not identify any draft exchanged before March 2020 that contained a 15-year base term (Doc. 45-1 at 41).

5

Consistent with the drafts, Defendant's contemporaneous internal communications show that when Plaintiff floated a 15-year term, Defendant expressly rejected it (Docs. 42 at 8–9; 42-3).  On September 17, 2019, Adam McDannold, Defendant's Real Estate Portfolio Supervisor, stated to a colleague that he "confirm[ed] [] that we don't want to do a 15 year deal here" and would "reach back out today and let you know where we end up" (Doc. 42 at 9).  On September 29, 2019, he followed up on the negotiations (*id.*):

> I actually talked to [landlord] this afternoon.  He will remove the asbestos if we do a 15 year lease.  I told him I didn't feel confident that would happen and if he had a new tenant going in he would be stuck with the cost of removing asbestos anyway. . . .  Unless if we want to lock ourselves in for 15 years here, I was going to call him back and tell him no to 15 years but we will move forward with his proposed deal if he will remove the asbestos so we can upgrade the floors.

Internal notes indicate this was communicated to the landlord (Doc. 42-2 at 4):

- 9/25 Told [landlord] we need the asbestos removed.  [Landlord] said he would do it for a 15 year term.

- 9/26 Told [landlord] we don't want to do a 15 year deal and that we feel, since we are taking on such a rent increase . . . , he should remove the asbestos.

- 9/30 [Landlord] agreed to remove asbestos.  Wants to do a new lease.

And that's what happened.  Defendant abated the asbestos in exchange for $16,000 from Plaintiff (Doc. 42-1 at 30).

Turning to Plaintiff's proof of intent, the record is slim.  Plaintiff's Rule 30(b)(6) witness testified he did not believe Defendant ever sent a lease proposal with a term longer than 10 years (Doc. 45-2 at 32).  He also testified that Plaintiff did not explicitly communicate to Defendant, before execution, that Plaintiff believed the base term was 15 years (*id.* at 52–53).  He could not identify any redlines changing the base term from 10 to 15 or any rent language for years 11 to 15 (*id.* at 53–54).  Nor could he identify documentation reflecting that the parties explicitly discussed and agreed to a 15-year base term before execution (*id.* at 60).

6

Ohio courts consider this sort of negotiation evidence when resolving ambiguous language. *See, e.g.*, *Money Station, Inc. v. Elec. Payment Servs., Inc.*, 136 Ohio App. 3d 65, 72–73 (Ohio Ct. App. 1999) (holding that where contractual language is ambiguous, extrinsic evidence is properly considered to determine intent).  Taken together -- drafts, contemporaneous emails/notes, and deposition testimony -- all point to the same conclusion:  Defendant did not agree to a 15-year base term, and no such change was ever negotiated into the Lease the parties reviewed and executed (Docs. 42 at 8–9; 42-3; 43 at 5–6; 45-2 at 52–53).

Finally, Plaintiff's reliance on Section 33 assumes the Memorandum is the type of exhibit Section 33 was designed to prioritize.  But Section 33 is narrower than Plaintiff's reading.  It gives priority to exhibit provisions governing "covenants, conditions, restrictions, rules and regulations" (Doc. 44 at 3).  Plaintiff's corporate representative agreed that "covenants, conditions, restrictions, rules and regulations" typically refers to items like rules, restrictions, or operational requirements -- not a memorandum describing basic lease facts for recording (Doc. 45-2 at 56–58). And Plaintiff's owner similarly testified he had "no idea" why the Memorandum was not expressly listed in the provision Plaintiff now relies on (Doc. 45-1 at 66).  The statute governing memoranda reinforces that point.  Ohio Revised Code ("R.C.") § 5301.251 permits recording a memorandum "in lieu of" recording the lease and describes the notice effect of information contained in the memorandum. Thus, such a memorandum is generally a recording substitute and notice instrument, not the vehicle for renegotiating economic terms of a lease.

**Ambiguity & Error**

Plaintiff argues that if the Memorandum creates ambiguity, it must be construed against Defendant (Doc. 44 at 17).  Not so.  Ohio does recognize the general rule that ambiguities are construed against the drafter.  *See Bellish*, 142 Ohio St. at 41 (stating the "well established rule" that in case of ambiguity the document is construed most strongly against the person who prepared

it).    However, that rule does not control here because it is a "secondary rule of contract construction," used only if extrinsic evidence fails to clarify the meaning.  *KSMAC*, 2022-Ohio-1456, ¶ 20 ("If the use of extrinsic evidence fails to clarify the meaning of the contract, then the contract is strictly construed against the drafter.").  *See also Cadle v. D'Amico*, 2016-Ohio-4747, ¶ 24 (Ohio Ct. App. 2016) ("If the parties' intent cannot be determined from consideration of extrinsic evidence, then the contract must be construed against the drafter.").

Here, the extrinsic evidence does clarify meaning.  This evidence all points in the same direction: the parties intended a 10-year base term (Docs. 42 at 2–3; 43 at 5–6; 45-2 at 44–45).  This is not a case where the parties are stuck with two equally plausible readings after a full evidentiary record.  Once the ambiguity is resolved by the best evidence of intent, this Court cannot override that intent.

The "fifteen years" reference in the Memorandum is best understood as a scrivener's error that does not rewrite the deal.  "Ohio treats a scrivener's error in a contract the same as a mutual mistake."  *Meyer v. Bank of Am., N.A.*, 2019 WL 6467196, at *9 (S.D. Ohio 2019).  *See also ArcelorMittal Cleveland, Inc.*, 750 F. Supp. 2d at 847 ("A court may reform an instrument where, due to mutual mistake, the instrument does not express the actual intention of the parties.").

Here, the record reveals "clear and convincing evidence that the parties were mutually mistaken regarding the contents of the contract."  *Id.*  First, the Lease's rent provisions logically fit a 10-year base term, not a 15-year base term (Docs. 42 at 2–3; 45-2 at 44–45).  Second, there is no evidence of a negotiated term change in drafts or redlines (Doc. 45-2 at 44–48).  Third, the evidence points to this mistake being mutual, as neither side caught the mistake until Plaintiff contacted a real estate broker in 2022 to attempt a sale (Doc. 42 at 25–26).  In other words, treating the Memorandum as controlling would require finding a materially different bargain than the one supported by the record.

**CONCLUSION**

This Court finds in favor of Defendant.  The parties negotiated and agreed to a 10-year lease, beginning July 1, 2020 and ending June 30, 2030.  This case is closed.

IT IS SO ORDERED.

      s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 19, 2026